354 F.2d 715
 Norman C. KITCHELL, Defendant, Appellant,
v.
UNITED STATES of America, Appellee.
William TOOMEY, Defendant, Appellant,
v.
UNITED STATES of America, Appellee.
Joseph William CABRERA, Defendant, Appellant,
v.
UNITED STATES of America, Appellee.
Albert George LITTLE, Jr., Defendant, Appellant,
v.
UNITED STATES of America, Appellee.
Pasquale J. MARANO, Jr., Defendant, Appellant,
v.
UNITED STATES of America, Appellee.
 Nos. 6532-6535, 6569.
 United States Court of Appeals First Circuit.
 Heard Nov. 2, 1965.
Decided Jan. 5, 1966.
 
 James W. Noonan, Boston, Mass., for appellant Kitchell.
 James C. Heigham, Boston, Mass., for appellant Toomey.
 John M. Harrington, Jr., Boston, Mass., for appellant Cabrera.
 Robert S. Jones, Boston, Mass., for appellant Little.
 Joseph J. Balliro, Boston, Mass., for appellant Marano.
 William B. Duffy, Jr., Asst. U.S. Atty., with whom W. Arthur Garrity, Jr., U.S. Atty., was on brief, for appellee.
 Before ALDRICH, Chief Judge, and HASTIE* and McENTEE, Circuit judges.
 ALDRICH, Chief Judge.
 
 
 1
 In the late evening of Saturday, May 30, 1964, a warehouse of the Burlington Grocery Company of Burlington, Vermont was broken into the some 135 cases of cigarettes were stolen and removed in a company truck. Defendants Kitchell, Toomey, Cabrera, Little, Saunders, and Driscoll, were charged in two counts of a single indictment with conspiracy and the substantive offense of transporting the cigarettes in interstate commerce. Defendant Marano was charged in another count with receiving them. All were convicted as so charged, except Driscoll, who was ordered acquitted for lack of evidence, and Saunders, whose trial was severed because he was unavailable. Each appellant challenges, inter alia, the sufficiency of the evidence against him.
 
 
 2
 At 7:00 P.M. of the evening of the theft, Cabrera and Kitchell[1] were seen coming out of a department store near Burlington, and entering a car in the rear seat of which sat three unidentified men. The car was registered in Massa-chusetts and owned by one Tarrant, who roomed with defendant Toomey. This store carried the type of pinchbar found at the scene of the theft.
 
 
 3
 Cabrera lived four miles from the warehouse. At 11:00 P.M. the same night, he and two unidentified men were seen talking together on the road near the warehouse. About that time[2] he was also seen, a short distance away, using an outdoor telephone. Cabrera told a policeman, who asked his business in the area, that he had gone for a walk after having an argument with his wife, and was calling a cab to go home. Some days later he told another policeman that he had been looking for a card game,[3] but declined to say where he had expected to find one.
 
 
 4
 Immediately after Cabrera was seen near the warehouse, a Burlington Grocery Co. truck was seen coming out of the warehouse garage. Shortly before mindight, near Middlebury, Vermont, a witness picked up a case of cigarettes that had fallen out of the moving truck and followed the truck into a gas station to return it. He identified Little and Saunders, the latter of whom was wearing a company uniform and appeared to be in charge.[4] They talked jointly with the witness, telling him that they were five hours behind schedule, and that they would be back later to recover another case which the witness said had also fallen out of the truck and had been picked up by a friend. Little's conduct amply warranted a finding that he was an active participant, not merely a hitchhiker.
 
 
 5
 Monday morning, June 1, Marano rented a Wayside truck in Somerville. About an hour later the company truck was seen in the Boston & Maine Railroad freight yards in Cambridge, Massachusetts, backed up to a Wayside Rental truck. Toomey[5] was then seen to drive the company truck up against a seawall and leave it. Besides Toomey, there were present in the freight yards Marano and an unidentified man. The unidentified man drove off in the Wayside turck. Toomey and Marano drove away in Marano's car.
 
 
 6
 Tuesday evening, the police found a Wayside truck in a parking lot in Revere, Massachusetts, near the Bali Lounge, at which Marano was employed. Marano acknowledged that he had rented the Wayside truck, but said that it had been missing. On Tuesday afternoon, one Harris, accompanied by Toomey, had rented a Hertz truck. At 1:00 A.M. on Wednesday, police stopped a Hertz truck coming out of the Bali Lounge parking lot. It proved to be the one rented by Harris. Saunders was driving, and the cigarettes were inside.
 
 
 7
 Kitchell made a full confession to the grand jury, naming his associates and describing their roles. Somewhat edited, and with 'he' or 'they' substituted for the names of Kitchell's associates, this testimony was introduced at the trial, with instructions to the jury to consider it only against him.
 
 
 8
 The case, in our opinion, was adequately proved against all appellants. Five men, including Kitchell[6] and Cabrera, in Toomey's roommate's Massa-chusetts car in Burlington Saturday evening; three men, including Cabrera, standing near the warehouse garage when the truck came out Saturday night; Little on the truck an hour later, participating with Saunders in transporting recently stolen goods; Toomey in charge of the truck on Monday, and driving off with Marano; Marano renting a Wayside truck shortly before the load could be found to have been transferred from the Burlington truck to a Wayside truck; Toomey participating in renting a Hertz truck; a Wayside truck being found near the Bali Lounge, Marano's place of employment; the Hertz truck coming out of the Bali Lounge in the middle of the night, driven by Saunders, and containing the cigarettes. This was a wellrounded circle, embracing all defendants. The motions for acquittal were properly denied.
 
 
 9
 All of the other appellants made timely motions to sever their trials from Kitchell's, on the ground that Kitchell's self-incriminating statement to the grand jury incriminated them as well. The court denied the motions. At the trial it admitted Kitchell's testimony, but, as we have said, deleted names, and expressly limited its use to Kitchell. No absolute rule of law requires severance when testimony admitted against some defendants, incriminatory of others, is not admissible against all. It depends upon the circumstances. Delli Paoli v. United States, 1957, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278; Katz v. United States, 1 Cir., 1963, 321 F.2d 7, cert. den. 375 U.S. 903, 84 S.Ct. 193, 11 L.Ed.2d 144. Compare United States v. Escheles, 7 Cir., 1965, 352 F.2d 892. In view of our disposition of the case, we will not discuss the various factors here involved, but we find that the district court committed no error in ordering a joint trial.
 
 
 10
 We next consider two claims relating to remarks made by the Assistant United States Attorney in his closing argument.[7] Early in his summation government counsel referred to the fact that none of the government's evidence had been 'contradicted' or 'refuted.' Though not obviously a comment upon defendants' failure to take the stand, compare Desmond v. United States, 1 Cir., 1965, 345 F.2d 225, as distinguished from comment upon the absence of other witnesses who might have been called to offer contradiction, see Peeples v. United States, 5 Cir., 1965, 341 F.2d 60, cert. den. 380 U.S. 988, 85 S.Ct. 1362, 14 L.Ed.2d 280, we think such remarks are generally undesirable because the jury is likely to understand them in the former sense. However, the district court acted promptly, sua sponte, to counter any prejudice resulting from counsel's argument. Fleming v. United States, 1 Cir., 1964, 332 F.2d 23.
 
 
 11
 Thereafter, government counsel proceeded to review the evidence against each defendant. In the course of referring to Kitchell, he stated,
 
 
 12
 '* * * there was a comment made by defense counsel, there is no evidence here that Mr. Kitchell knew of any of the other defendants. I submit to you it is an unfair comment. There are certain rules of evidence, his Honor will instruct you about, what the Government can introduce without prejudice to its case. I submit it is in that light you must consider that comment. There is no evidence to establish that Mr. Kitchell does not know-- * * *.'
 
 
 13
 Toomey and Cabrera promptly objected. The court sustained the objection, called government counsel to the bench, and stated that he should make no further argument of that nature. Counsel then continued to discuss the evidence against Kitchell, and while so doing, stated,
 
 
 14
 'The issue is not, does he know these other defendants? If that were the issue, we would bring in an entirely different set of witnesses.'
 
 
 15
 As soon as the argument was finished, all appellants objected to this statement.
 
 
 16
 Remarks on the availability of unused 'evidence' are clearly impermissible. Ginsberg v. United States, 5 Cir., 1958, 257 F.2d 950; see United States v. Lefkowitz, 2 Cir., 1960, 284 F.2d 310, 314; cf. Greenberg v. United States, 1 Cir., 1960, 280 F.2d 472, 475. Conceivably a single error in this regard might have been cured by the court's sustaining the objection. The government cannot go on, however, making such remarks and having the court strike them out, and then claim they had no effect. We think in this case the government's conduct could have had but one effect, that of fixing the jury's attention on the fact that Kitchell's unnamed associates were the other defendants. Whether by negligence or design, the government did its best to bring in and emphasize the very evidence which these defendants had sought to avoid by their motions for severance, and which the court had carefully excluded. Where this possibility of prejudice existed, the government should have been particularly circumspect, instead of the opposite. We cannot sanction such improprieties. The potential for prejudice in this case is magnified by the fact that the admissible evidence we have outlined connecting various defendants other than Kitchell with the criminal enterprise, though sufficient to go to the jury, was in several instances fragmentary and not particularly strong.
 
 
 17
 The appellants other than Kitchell must be given a new trial. We include Cabrera in this because, although Cabrera was independently identified as having been with Kitchell in Vermont, this testimony was far less damaging than Kitchell's specific statement, which, among other things, directly ascribed to Kitchell's companion the buying of the pinchbar.
 
 
 18
 On the other hand, we are unwilling to say that Kitchell was prejudiced. The evidence naming his associates was not introduced against him, not because it did not exist, nor because it was inadmissible against him, but solely for the sake of the other defendants. Even if the government's conduct led the jury fully to assume that the evidence existed, it did in fact exict, in the peculiar circumstances of this case, insofar as Kitchell was concerned.[8]
 
 
 19
 Kitchell complains, however, that his grand jury testimony should not have been introduced at all, claiming that Escobedo v. State of Illinois, 1964, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, forbad it. It is true that Kitchell was brought before the grand jury by summons at a time when he was clearly suspected of having committed the crime, and that he came without counsel. Before he was interrogated, however, he was informed of the subject matter of the investigation, was fully advised of his rights, and acknowledged that he understood them.[9] The district court found that the decision to testify was '* * * intelligently arrived at by him on his own without compulsion of any kind.' This was enough. See Escobedo v. State of Illinois, supra, 378 U.S. at 490 fn. 14, 84 S.Ct. 1758; cf. Jones v. United States, 1964, 119 U.S.App.D.C. 284, 342 F.2d 863, 882. There is no merit in Kitchell's further claim that the fifth amendment's protection against self-incrimination precludes the mere summoning of a prospective defendant before a grand jury. See United States v. Winter, 2 Cir., 1965, 348 F.2d 204, petition for certiorari denied, 9/14/65, 86 S.Ct. 429; Jones v. United States, supra, 342 F.2d at 880-882; Mulloney v. United States, 1 Cir., 1935, 79 F.2d 566, cert. den. 296 U.S. 658, 56 S.Ct. 383, 80 L.Ed. 468.
 
 
 20
 Judgment will be entered affirming the judgment as to Kitchell, but setting aside the verdicts as to the other appellants, vacating the judgments against them, and directing further proceedings not inconsistent herewith.
 
 
 
 *
 By designation
 
 
 [1]
 The government tried the case with considerable imprecision. In this instance, for example, the witness identified these two defendants merely as the individuals in certain seats in the courtroom, their names not being stated for the record. Subsequent questions to the witness sufficiently indicate that these were in fact the defendants identified
 
 
 [2]
 The hour was supplied by the prosecutor in answer to a question by the court during the examination, and not by the witness. No one objected, and it is too late to do so on appeal. The reason for lack of objection is clear enough. The witness had previously given 11:00 P.M. as the time on a voir dire
 
 
 [3]
 Cabrera correctly points out that the officer was not asked the date to which this second inquiry related. Since no one objected to the testimony, or attempted to clarify it, we must hold that the jury was warranted in assuming it referred to the night in question
 
 
 [4]
 The overt act alleged in the conspiracy count was that Saunders drove the truck from Burlington to Boston. We think that the jury could adequately so infer. We do not consider it a material variance that the truck was found in Cambridge, immediately across the Boston line. If there be any doubt about these matters, however, we note that concurrent sentences were imposed on the conspiracy and the substantive counts. See United States v. Romano, 11/22/65, 86 S.Ct. 279
 
 
 [5]
 The witness identified the driver as the defendant 'fourth from the right.' Nowhere in the testimony can we discover who this was. We find, however, that in its argument to the jury the government stated that the witness had identified Toomey as the driver. No objection was made. $f$tn6. As against Kitchell there is, of course, his confession, fully corroborated by the extrinsic evidence
 
 
 [7]
 Objections were also made to several misstatements of the testimony. One of these was that a witness identified Cabrera as one of the three men near the grocery store when, in fact, that particular witness had not done so. Another was that Cabrera was the 'only' Vermonter, and thus the natural person to 'set up the job.' In fact, the addresses of two other defendants had not been shown. The court specifically instructed the jury for the purpose of correcting these missstatements, and we believe no prejudice remained. A number of other objections the court found, and we find, either incorrect or trivial
 
 
 [8]
 Although the situation might be different if we ordered judgment of acquittal for Kitchell's co-defendants, see Herman v. United States, 5 Cir., 1961, 289 F.2d 362, 368, cert. den. 368 U.S. 897, 82 S.Ct. 174, 7 L.Ed.2d 93, Kitchell's conviction for conspiracy is not vitiated because they are entitled to a new trial. A single defendant can be indicted and convicted of conspiracy providing an unlawful agreement with others can be proved. Rogers v. United States, 1951, 340 U.S. 367, 375, 71 S.Ct. 438, 95 L.Ed. 344; see United States v. Gordon, 3 Cir., 1957, 242 F.2d 122, 125, cert. den. 354 U.S. 921, 77 S.Ct. 1378, 1 L.Ed.2d 1346
 
 
 [9]
 Ass't U.S. Attorney. 'This is a Federal Grand Jury and it is looking into certain alleged violations of the Federal Criminal Code and, in particular, they are looking into violations concerning an alleged theft of certain property and the transportation of that property across state lines from Vermont to Massachusetts and the receiving of said property in Massachusetts. And you are to be advised that you have certain rights under the Fifth Amendment of the Constitution, in the main, your right against self-incrimination and, also, the Sixth Amendment, that you can have counsel, not present in this room, but that you can have access to one. You do not have to say anything, but anything you do say may be used against you at a later date
 'I ask you now, do you understand your rights?'
 Kitchell. 'Yes, I do.'