**Donald G. KING, Defendant, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 6612.**

United States Court of Appeals First Circuit.

Heard Dec. 3, 1965.

Decided Jan. 18, 1966.

Robert A. Ford, Boston, Mass., for appellant.

Edward J. Lee, Asst. U. S. Atty., with whom W. Arthur Garrity, Jr., U. S. Atty., was on brief, for appellee.

Before ALDRICH, Chief Judge, and McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

The defendant King was jointly indicted, with one McKenney, on two counts, for transferring narcotics in violation of 26 U.S.C. § 4705(a). Each count alleged a separate transaction, both on July 14, 1964. (Case No. 126). In another indictment McKenney, alone, was charged with two other violations of this section; one on June 18, 1964, and one on August 10, 1964. (Case No. 125). All transactions were placed in Boston.

Both indictments were assigned to the same district judge. In Case No. 126 King moved under F.R.Crim.P. 14, "for severance of the above entitled action, as he is prejudiced by a joinder of his alleged offenses with those of the co-defendant McKenney." McKenney filed a similar motion. A pretrial hearing on these motions was assigned for June 3, 1965. At the outset, the court announced that it was not going to hear King on his motion [1] because he had court-appointed counsel and it wanted the government to show counsel its file, and that such inspection might cause counsel "to advise his client to plead guilty." [2] The court then heard from defendant McKenney, who stated that he wished specifications so that he might determine whether he wanted Cases No. 125 and No. 126 tried together. The court refused specifications, but informed McKenney's counsel that he might choose whether he wanted separate trials or a consolidated trial. It then asked the Assistant U. S. Attorney whether the cases were "substantially the same kinds of transactions," and received an affirmative answer. [3] McKenney thereupon withdrew his motion for severance and stated that he would like to have both cases consolidated for trial. The court designated June 21. No inquiry was made of counsel for King whether he objected to consoli-

---

1. The court's statement, coupled with a reprimand to government counsel who was thought by the court about to contest its ruling in another connection, made it very clear to counsel for King that he was not to be heard further that day. The court did not set any date when it would wish to hear from him.

2. Statistically, we do not know how many clients accept such advice when there is a mandatory five-year jail sentence. In any event, we record strong disagreement with the court's position that "court-appointed counsel [is] almost in the same position as the court itself in regard to access." The rights of a defendant are not to be determined on an ad hominem basis with respect to his counsel, whether because, as the court observed in this case, he is believed "reliable," or, as the court stated was its practice, by distinguishing between court-appointed counsel and counsel the defendant personally chooses. There should be no special relationship between court-appointed counsel and the court and no special favors. Quite apart from what would seem to us the obvious inequity, the court's practice might well cause defendants who otherwise would not have done so, to seek court-appointed counsel, thereby increasing the government's financial burden under the Criminal Justice Act.

3. Due to a misunderstanding the prosecutor's response was over-cryptic. To the court's initial question, "what the difference in the two cases is," he replied, instead, concerning the two counts in Case 126, that "there was a joint transfer and sale involving both McKenney and King of the drug." The court replied, "Why wasn't this all put down in one indictment? * * * Are they

dating the cases, although it was obviously contrary to his motion for severance in Case No. 126 and, indeed, an even more adverse ruling.

On June 21, when the defendants were jointly set to the bar to be tried, counsel for King approached the bench and stated that he had a motion for severance. Without waiting to hear him, the court replied, "Denied." It is this denial which defendant argues entitles him to object to the consolidation of the cases for trial, the sole issue on this appeal.

█ Were we to view the request of counsel with blinders, we would say that the only motion for severance which had been filed was one to separate the trials of King and McKenney in Case No. 126 and that the propriety of joining Cases 126 and 125 had never been challenged. But there are several circumstances which persuade us to take a broader view: first, the ambiguous colloquy between the court and government counsel, where the court sought information about the difference between the two cases and received a perhaps insufficient answer (see fn. 3, supra); second, the prosecutor's answer, if complete, in terms related, as will be hereinafter pointed out, to the appropriateness of joining counts against one defendant, and not to joining several defendants, the latter an issue never properly explored; and finally, and most important, the fact that the narrow motion to separate King and McKenney for trial in Case No. 126, the minimum motion King raised, would, if granted, logically lead to King's being tried separately from McKenney's Case No. 125 in which he was not even named. In sum, we reject the government's contention that King is presently reduced to asserting plain error under Rule 52.

Enough had happened to keep the issue alive.

█ The court's inquiry whether the offenses were substantially the same was too limited. It is true that under F.R.Crim.P. 13 there may be joint trials of defendants separately indicted. The test is whether they might have been jointly indicted under Rule 8(b). Whether the transactions were substantially the same ("of the same or similar character"), is an appropriate test in determining if a single defendant may be charged with several offenses in one indictment under Rule 8(a). Under Rule 8(b), however, in order to charge several defendants under one indictment they must have "participated * * * in the same series of acts or transactions * * *." [4] A "series" is something more than mere "similar" acts. The reason, since the question has never been fully explored in this circuit, invites a considerable examination of the subject of joinder.

█ A joinder of offenses, or of defendants, involves a presumptive possibility of prejudice to the defendant, and of benefit to the court, by which term we include the government and the public. Although the two matters are disparate and difficult to compare, the prejudice may be relatively small, compared to the benefit, and hence tolerable. Rule 8 is an attempt to set the limits of tolerance, and any joinder which does not fall within it is per se impermissible. Ward v. United States, 1961, 110 U.S.App.D.C. 136, 289 F.2d 877; cf. McElroy v. United States, 1896, 164 U.S. 76, 17 S.Ct. 31, 41 L.Ed. 355. In addition, Rule 14 provides that, even within the rule, the court may sever for trial if special prejudice appears. Drew v.

---

substantially the same kinds of transactions?" The prosecutor's affirmative answer to the last question may well have suggested that there was more similarity of substance than the mere fact that they were all small retail sales to the same government agent.

4. Rule 8(b). *"Joinder of Defendants.* Two or more defendants may be charged

in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count."

United States, 1964, 118 U.S.App.D.C. 11, 331 F.2d 85. We will not consider those special cases. Neither do we consider when misjoinder may become an issue only during the course of trial. Schaffer v. United States, 1960, 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921; cf. Ingram v. United States, 4 Cir., 1959, 272 F.2d 567. We consider only the basic interpretation of Rule 8, viewed in advance of trial.

First, prejudice. Basically, even to try a single defendant for more than one offense involves prejudice, it being regarded as normally inadmissible, in determining whether a particular offense was committed on one occasion, to show that a similar offense was committed on another occasion. Macdonald v. United States, 1 Cir., 1920, 264 F. 733; Martin v. United States, 1942, 75 U.S.App.D.C. 399, 127 F.2d 865; Lovely v. United States, 4 Cir., 1948, 169 F.2d 386; People v. Molineux, 1901, 168 N.Y. 264, 61 N.E. 286, 62 L.R.A. 193; McCormick, Evidence § 157; 1 Wigmore, Evidence, §§ 55, 57, 194 (3rd ed. 1940). This is colloquially spoken of as the "bad man" theory. McCormick, op. cit. supra; cf. Wigmore, § 192. Nonetheless, of course, there may be times when, even if the defendant were being tried for a single offense, other similar offenses could be shown, as bearing on intent, or on some other factor making relevance more important than the prejudice. For this reason "similar acts" is presumptively a more appropriate basis for joinder than would be dissimilar acts.

■ It may be equally prejudicial to try two defendants together. Because of the natural tendency to infer guilt by association, a defendant may suffer by being joined with another allegedly "bad man." Here, again, no special prejudice may in fact arise from the joinder for trial, because the proof, even if the defendant were tried alone, might properly show his association with the other individuals. Again, Rule 8(b) is couched in terms which roughly cover or include this sort of case.

■ In these situations there may be little or no prejudice arising out of joinder. However, Rule 8(b) is not limited to situations in which proof of the other criminal transaction would be admissible in a separate trial. It goes beyond, to others, the excuse being the benefit to the court. But to offset the prejudice where multiple defendants are being joined even though they did not engage in a joint act, such as conspiracy, Kitchell v. United States, 1 Cir., 1965, 354 F.2d 715, this possibility of benefit should explicitly appear from the indictment or from other representations by the government before trial. Classic examples of such a benefit are when there is an overlapping of issues, as, for example, when some defendants are charged with transporting stolen goods in interstate commerce, and others are charged with receiving the goods, so stolen and transported, Kitchell v. United States, supra; Caringella v. United States, 7 Cir., 1935, 78 F.2d 563, or when defendants are charged with conspiracy to conceal a crime that part of their number are charged with committing, United States v. Perlstein, 3 Cir., 1941, 120 F.2d 276 (rev'g on other gr'ds), 2nd convictions aff'd, 1942, 126 F.2d 789, cert. den. 316 U.S. 678, 62 S.Ct. 1106, 86 L.Ed. 1752. Where, however, there are no presumptive benefits from joint proof of facts relevant to all the acts or transactions, there is no "series," Rule 8(b) comes to an end, and joinder is impermissible.[5] United States v. Spector, 7 Cir., 1963, 326 F.2d 345, 350; McElroy v. United States, 1896, 164 U.S. 76, 81, 17 S.Ct. 31, 41 L.Ed. 355.

■ Rule 8(b) is not to be implemented by Rule 8(a). For example, a single defendant, A, may be charged in one indictment with acts X, Y and Z,

---

5. While some cases seem to have gone a considerable distance in deciding what was a series of acts, see Wiley v. United States, 4 Cir., 1960, 277 F.2d 820, cert. den. 364 U.S. 817, 81 S.Ct. 47, 5 L.Ed. 2d 47; cf. Cataneo v. United States, 4 Cir., 1948, 167 F.2d 820, 823, we find none that has dispensed with the necessity of a connection, or where one has been suggested on facts like the present.

simply because they are similar offenses. Or he might be charged in one indictment with defendant B for offense Z if it were a joint offense. This fact, however, does not automatically mean that B can be joined with A as to offenses X and Y. In applying a test of "substantially the same kinds of transactions," this is what the district court did. The allegations of the indictment not only show this, but, as the evidence developed, the prejudice inherent in the court's limited test was made affirmatively apparent.[6] We do not, however, rely upon that. As matter of law, the offenses on the other dates not being a connected series of acts, and King being in no way involved, there was no basis for requiring him to be tried in conjunction therewith.

Judgment will be entered setting aside the verdict as to appellant, and the judgment entered thereon, and remanding the action for further proceedings not inconsistent herewith.

---

**6.** In connection with the July 14 sales in which King allegedly participated, King was "the man," or McKenney's source of supply. The government agent was unsuccessful in learning who was McKenney's man on the other occasions. It seems to us that it might be natural for the jury to fill this void with King.

If it did, the government was thereby showing other offenses by King not included in the indictment, the very thing it could not properly do, Macdonald v. United States, supra, and of which in fact it had no evidence even warranting the inference.