**UNITED STATES of America,**
**Appellee,**

v.

**Pedro MARTINEZ, Defendant,**
**Appellant.**

No. 72-1242.

United States Court of Appeals,
First Circuit.

Heard April 9, 1973.

Decided May 8, 1973.

Martin Kantrovitz, Boston, Mass., by appointment of the Court, for appellant.

Robert B. Collings, Asst. U. S. Atty., with whom James N. Gabriel, U. S. Atty., was on brief, for appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Convicted of distributing heroin in violation of 21 U.S.C. § 841(a)(1), Appellant alleges that the district court erred in permitting him to be joined in the indictment and tried with other defendants, and that the evidence was insufficient to support the verdict. We affirm.

The two-count indictment charged one Felix Garcia and one Anna Rodriguez with distributing heroin at Salem, Massachusetts, on March 9, 1972 (Count One) and on March 14, 1972 (Count Two). Persons named Carrion and Olmo were joined with Garcia and Rodriguez as co-defendants in Count One. Appellant Martinez was joined with Garcia and Rodriguez as a co-defendant in Count Two.

Garcia and Rodriguez did not appear for arraignment; they were fugitives through the time of trial. Only Carrion, Olmo and Appellant were arraigned and actually tried at a joint trial.

After arraignment and before the trial, Appellant moved to sever Count Two from Count One on the ground that the trial of Count One, in which he was not named, would be prejudicial. The motion was denied.

The government's principal witness was an undercover agent who gave evidence on both Counts. He testified to going to apartment 8, 64 Palmer Street, Salem, on March 9, 1972, and purchasing a large quantity of heroin from Garcia and Rodriguez. He testified in considerable detail to discussions concerning price and quantity. Carrion and Olmo, who were present some of the time, helped wrap the drug in separate bundles. After the purchase, the agent arranged with Garcia (also known as "Junior"), Anna Rodriguez, and a man named "Peter" for a future meeting. Appellant was not connected with the March 9, 1972, transaction. During the agent's testimony, the Court cautioned the jury,

> You will remember in the government lawyer's opening he said there is no charge against Mr. Martinez, the defendant third away from you, on the basis of evidence having to do with March 9th, in any event, so obviously you cannot consider this testimony against Mr. Martinez.

Similar cautionary instructions were given by the Court at other times. Both the prosecutor and Appellant's attorney emphasized to the jury that Martinez was not involved in the March 9 purchase and that "Peter" was not Pedro Martinez.

The undercover agent testified to meeting again with "Junior" (Garcia) on March 14, this time on Perkins Street, Salem. Garcia was with Appellant and introduced him to the agent. The agent, in Appellant's presence, asked Garcia if he had spoken to Peter. Garcia said he had not. The agent said he wanted to purchase ten bundles of heroin. Garcia replied that he could provide them. The conversation then turned to price, the agent saying he did not want to pay the price that he had paid during their prior negotiations, but only $125 a bundle, or $1,250 for ten bundles.

Garcia told the agent to wait, that it would take him a half hour to get the bundles. Garcia and Appellant then left, the agent returning to his automobile in which a second undercover agent was sitting.

A half hour later, the agents saw both Junior and Appellant walk up Perkins Street, stop momentarily to speak to an unidentified white male, and enter the lot where the agents had parked. The principal agent got out of the car and spoke further with Garcia, in the presence of Appellant. The white male remained in view, stationary.

Garcia proposed a new deal. He would provide 24 spoons of heroin at $60 a spoon. It would be easier that way, he said; the agent would make more money. The agent said he did not wish to pay $60 a spoon but would pay $50.

After conversing in Spanish with Appellant for a few moments, Garcia

agreed. Then the white male started to enter the parking lot. Both Appellant and Garcia motioned for him to stay where he was, Garcia saying words to the effect, "Don't come over here." Appellant, who was on Garcia's right side, started to walk towards the white male and raised his hand, his palm facing outward towards the man. The latter stopped.

Garcia and Appellant then got into the agents' car, the agents in front, Garcia and Appellant in back. The agent and Garcia continued to discuss the proposed purchase. The agent wanted to know whether he would still receive a two-cut of heroin rather than a three-cut. Garcia said it would be a two-cut and would be good heroin. The agent said he was puzzled about how much money he could make from the new deal. Garcia, writing figures on a piece of paper, engaged in conversation with Appellant. Once during the figuring Appellant said to Garcia, "No, no," and pointed to some of the figures on the paper. Garcia crossed several of them out, and wrote again in the same area. Garcia told the agent that by purchasing at $50 a spoon he would be paying $1,200; by converting and packaging the heroin himself, he could receive $125 or better a bundle, and could get much more if he packed it in dime quantities. While the paper was not handed to him, the agent saw some of the figures. They were mostly multiplications, e. g., x bags times x price equals a certain price.

The agent agreed that it would be a profitable deal if the heroin was good, and Garcia said, "Don't worry it will be good dope." Garcia told the agent to drive to the intersection of Palmer and Pingree Streets. Garcia said it would take about a half hour for delivery. Garcia and Appellant left the car, proceeding to Congress Street.

Another government witness testified to seeing Appellant and Garcia enter a Congress Street grocery store at about this time. He observed them purchase two boxes of aluminum foil.

Garcia, alone, returned to the car where the two agents were waiting. He led the principal agent to apartment 8, 64 Palmer Street, where the purchase of heroin was consummated. During the transaction, the agent observed an open box of aluminum foil in the room and another roll of aluminum foil not in a box. Garcia used the foil to package the heroin powder. The agent received 24 packets, each with a spoonful of heroin, for $1,200. After the purchase, the agent discussed future transactions with Garcia.

The principal agent's testimony was essentially confirmed by testimony of his companion in the car. The latter also testified to speaking with Appellant after his arrest. Telling him that he spoke "a little" English, Appellant answered in English several untranslated questions. One such answer was that he had had three years of school in Puerto Rico.

Appellant first contends that he was improperly charged in the same indictment with the defendants named in Count One. Under Fed.R.Crim.P. 8(b) "Two or more defendants may be charged in the same indictment . . . if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." [1] Thus joinder of Appellant with the others was permissible only if the two criminal acts on March 9 and March 14 were part of "the same series of acts or transactions."

A "series" means something more than similar acts. King v. United States, 355 F.2d 700, 703 (1st Cir. 1966). Rule 8(b) strikes a compromise between each defendant's right to have his own guilt considered separately, and

---

1. The final sentence of Rule 8(b) reads, "Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count."

the practical benefit to the government and the court of a consolidated proceeding. The defendant's right prevails unless there are presumptive benefits to the government from "joint proof of facts relevant to all the acts or transactions."

> . . . Rule 8(b) is not limited to situations in which proof of the other criminal transaction would be admissible in a separate trial. It goes beyond, to others, the excuse being the benefit to the court. But to offset the prejudice where multiple defendants are being joined even though they did not engage in a joint act, such as conspiracy . . . this possibility of benefit should explicitly appear from the indictment or from other representations by the government before trial.

*Id.* at 704.

In the present case, the indictment, supplemented by the government's bill of particulars, charged two criminal acts five days apart involving the distributing of heroin by the same two defendants, Garcia and Rodriguez. Both acts were particularized as occurring at apartment 8, Palmer Street, Salem. These factors, on their face, suggested a joint criminal enterprise by Garcia and Rodriguez, *viz.* that the heroin transactions were not isolated, but belonged to a series undertaken by common defendants from the same address. The interrelation of the two offenses was confirmed by evidence at trial. Both sales were to the same witness; it appears that the later meeting between Garcia and the agent was arranged on March 9. After the March 14 sale, Garcia and the agent discussed further heroin dealings. Had Garcia not defaulted, proof of what occurred on March 9 was likely to be admissible on the question of his guilt under Count Two. *See* Green v. United States, 176 F.2d 541, 543–544 (1st Cir. 1949), 2 Wigmore on Evidence § 304 (3rd ed. 1940). Similarly, Garcia's March 14 activities, including his discussion with the agent showing knowledge of the March 9 sale, was relevant to his

guilt under Count One. We find no misjoinder of counts in the single indictment. *See* United States v. Scott, 413 F.2d 932 (7th Cir. 1969), cert. denied 396 U.S. 1006, 90 S.Ct. 560, 24 L.Ed.2d 498 (1970).

■ Appellant argues that since Garcia did not participate in the trial, the presumptive benefits to the government of joinder evaporated. In *King* we spoke of such benefits as a rationale for Rule 8(b). But we did not suggest that a multiparty indictment which is correct when returned may become insufficient because one or more of the defendants later flees or pleads. Nothing but confusion would result if an indictment's sufficiency turned on unpredictable later events beyond the government's control. The government is entitled to charge and join parties on the basis of what it reasonably anticipates proving against all. The later unavailability of some may be a further factor to be considered by the Court if requested under Rule 14, on grounds of prejudice, to grant separate trials. But it does not constitute grounds for a Rule 8(b) attack.

Appellant next contends that he was prejudiced by denial of his pre-trial motion for severance of Count Two. Rule 14 provides: "If it appears that a defendant . . . is prejudiced by a joinder of offenses or of defendants in an indictment . . . the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires."

■ As Appellant recognizes, prejudice means more than just a better chance of acquittal at a separate trial. *See* Tillman v. United States, 406 F.2d 930, 935 (5th Cir. 1969). There was here no likelihood of confusion between the proof applicable to Olmo and Carrion and that applicable to Appellant. United States v. Clayton, 450 F.2d 16, 18–19 (1st Cir. 1971) cert. denied 405 U.S. 975, 92 S.Ct. 1200, 31 L.Ed.2d 250 (1972). Nor is this a case where proof of the same defendant's misconduct un-

der one count may prejudice his chances for acquittal under another count. None of the evidence in the first count pertained to defendant. *Cf.* Gregory v. United States, 125 U.S.App.D.C. 140, 369 F.2d 185, 189 (1966).

It is true that Olmo and Carrion were shown to have packaged heroin and to have engaged in conduct definitely tying them, as aiders and abettors, to the March 9 sale. Appellant contends that this stronger proof of their complicity on March 9 may have influenced the jury to convict him, on lesser evidence, of complicity on March 14. But the evidence of Garcia's guilt was as vivid for March 14 as for March 9. Garcia would have emerged a "bad man" whether or not Count Two had been tried separately; and it was his companionship that cast a cloud over Appellant. That Olmo and Carrion aided and abetted Garcia on March 9 had no tendency to show that Appellant did so five days later. As we find no reasonable likelihood of prejudice, we do not find error in the Court's denial of the motion for a separate trial.

Appellant contends, finally, that his motion for a judgment of acquittal should have been allowed. The contention requires us to review the sufficiency of the evidence, but in a light most favorable to the government. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Appellant was not present at the actual transfer of heroin from Garcia to the agent. His guilt, therefore, turns on the theory that he aided and abetted Garcia. 18 U.S.C. § 2. One may be found guilty as an aider and abettor although the government is unable to proceed in the same case against the principal. U. S. v. Hoffa, 349 F.2d 20, 40 (6th Cir. 1965), aff'd, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), rehearing denied, 386 U.S. 951, 87 S.Ct. 970, 17 L. Ed.2d 880 (1967). However, the government must prove that the principal committed the crime. Shuttlesworth v. City of Birmingham, 373 U.S. 262, 265,

83 S.Ct. 1130, 10 L.Ed.2d 335 (1963). Garcia's guilt as principal was, of course, supported by very substantial evidence.

For Appellant to be found guilty, it was necessary to establish, as the district court instructed, that he "associate[d] himself with the venture, that he participate[d] in it as something he wish[ed] to bring about, that he [sought] by his action to make it succeed." United States v. Peoni, 100 F.2d 401, 402 (2nd Cir. 1938). It is usually said that mere presence is not enough; however, there are circumstances where presence itself implies participation—as where a 250-pound bruiser stands silently by during an extortion attempt, or a companion stands by during a robbery, ready to sound a warning or give other aid if required. *See* United States v. Garguilo, 310 F.2d 249 (2nd Cir. 1962). It must be shown, in any event, that Appellant was "a participant rather than merely a knowing spectator." *Garguilo, supra,* 310 F.2d at 254.

There was persuasive evidence of participation. Appellant did not merely happen on the scene, or stand idly by, while the agent and Garcia negotiated. He was introduced to the agent by Garcia at the outset of negotiations. After the initial conversation, he and Garcia left together, Garcia indicating that he would return shortly with the heroin. Appellant reappeared with Garcia, the latter making a counterproposal to sell 24 spoons. When the agent demanded a lower price, Garcia first spoke in Spanish to Appellant before agreeing. Appellant motioned the white male away, an action which could be taken as aiding Garcia by keeping the conversations private. The jury could have inferred that, had Appellant been a mere bystander, he would not have joined the two agents and Garcia in the privacy of the car while the terms of the sale were further discussed. His interjection of "No, no" during these discussions, followed by Garcia's correction of figures on the paper relating to

the price of heroin, implied that he was counselling Garcia. His accompanying of Garcia to the store to buy aluminum foil, an innocent act by itself, in this setting implied complicity.

Whether Appellant understood what was going on was a fact question which the jury was entitled to resolve against him. There was evidence that he understood some English; his "No, no" interjection, and his conversations with Garcia in Spanish at points during the negotiations, implied that he was cognizant of what was being discussed. We conclude that there was sufficient evidence for the jury to find that he knowingly aided and counselled Garcia in the heroin transaction.

Affirmed.

Lay, Circuit Judge, concurred and filed opinion.

Matthes, Chief Judge, filed opinion concurring in part and dissenting in part.