UNITED STATES of America

v.

**Diane T. PERRY, Appellant.**

UNITED STATES of America

v.

**Donald LYNCH, Appellant.**

**Nos. 83–1636, 83–1650.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 5, 1984.

Decided April 6, 1984.

W. Gary Kohlman (appointed by this court), Washington, D.C., for appellant in No. 83–1650.

William J. Garber (appointed by this court), Washington, D.C., for appellant in No. 83–1636.

Terence Joseph Keeney, Asst. U.S. Atty., Washington, D.C., for appellee. Stanley S. Harris, U.S. Atty., Washington, D.C. (at the time the brief was filed), Michael W. Farrell, Judith Hetherton, Douglas J. Behr and Thomas E. Zeno, Asst. U.S. Attys., Washington, D.C., were on the brief for appellee in Nos. 83–1636 and 83–1650.

Before TAMM and WALD, Circuit Judges, and MacKINNON, Senior Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge MacKINNON.

MacKINNON, Senior Circuit Judge:

Appellants Diane Perry and Donald Lynch were indicted and tried together, and were convicted by a jury as charged. The indictment alleged two narcotics transactions arranged and witnessed by an undercover police officer—the first on or about September 27, 1982, the second on October 12, 1982. Appellant Perry was

charged on the first transaction, and both defendants were charged on the second. Appellant Lynch, however, was not indicted on the first transaction. He now complains that the joint trial of his case with that of his co-defendant was improper.

We have carefully reviewed the record in these cases, and conclude that the joint trial of the defendants was proper and not unduly prejudicial under Rules 8 and 14 of the Federal Rules of Criminal Procedure. The record reveals substantial evidence, made available by the Government to the district court before trial, that Lynch participated in the first transaction. The Court has also reviewed appellants' other claims of error, and while not finding those issues worthy of extended discussion, we address them briefly below. We affirm the convictions on all counts.

## I. FACTS

For purposes of this Court's treatment of these cases, focusing on the propriety of joinder of the defendants, we succinctly state the facts. The relationship between the two transactions and the two defendants is most important. Because the propriety of initial joinder is to be determined by the representations and evidence before the district court prior to trial, *see infra* section III, the facts recounted below are those arising from the testimony of the Government's witnesses at the motions hearing. This same testimony was produced at trial; in addition, some further facts were brought out at trial. *See infra* section II.[1]

Detective Rawls, a Metropolitan Police officer with the Drug Enforcement Administration Task Force, was the leading undercover officer on this investigation. During the course of Rawls' investigations into the suspected drug-related activities of Diane Perry, the police installed a court-authorized pen register on Perry's phone (MH 5). On September 28, 1982, Rawls purchased one-half ounce of cocaine from appellant Perry in her apartment (MH 22,

29–30). During this transaction, Perry phoned someone she called "Don" or "Donnie" to find out whether the cocaine was available. The man was not available, but Perry spoke to a woman called Barbara, and then left to pick up the drugs (MH 23–24, 29–31). After Perry left, Rawls found the name "Don" or "Donnie" in Perry's personal phonebook (MH 23–24, 29–31); the phone number next to the name in the book was the same as one later recorded by the pen register, and was registered to Barbara Blakely (MH 4–5, 14–15, 30–31). A police informant subsequently confirmed that a man known as "Don" or "Donnie" was the source of the cocaine (MH 23, 31–32).

In a series of telephone calls between the first transaction and October 12, Rawls arranged with Perry to make a followup purchase of four ounces of cocaine (MH 23). At 5:30 p.m. the evening of October 12, Perry called Rawls to tell him the cocaine would be ready that night; Perry then called Barbara Blakely's number (MH 6–7). At 8:30 p.m., a red 1975 Camaro, registered to Barbara Blakely, pulled up outside Perry's apartment with four passengers inside (MH 4–5, 7–8, 24). A black man got out, went into the apartment, and returned; the car then drove off (MH at 7–8). Perry then called Rawls and told him to come over (MH 24).

Rawls arrived at Perry's apartment at 9:00 p.m. that night, wearing a concealed tape recorder and radio transmitter that allowed his fellow officers to monitor his conversations (MH 6, 8, 24–25). Perry immediately gave Rawls a sample of the cocaine (MH 8–9, 25). When Rawls asked whether the source was the same as for the September 28 transaction, Perry responded "Yes" (MH 36). Rawls and Perry went on to agree that the same man would bring the cocaine to the street in front of Perry's apartment, and that Perry would then go out to exchange Rawls' cash for the cocaine (MH 8–9, 26). During these conversations, Perry used a telephone paging sys-

---

1. References to the transcript of argument and evidence presented at the motions hearing are designated "MH," while references to the trial are designated "Tr."

tem to get in touch with the man who was to supply the cocaine (MH 9, 26–27).

Some time later, a car horn blew outside. Perry looked out the window and said "That is him" (MH 10, 28), and immediately left her apartment. The only automobile on the block (other than police vehicles) was the same older model red car that had dropped by earlier (MH 28–29). Rawls notified his fellow policemen, and they arrested Perry as she walked toward the car (MH 11, 28–29). At the same time, the police arrested appellant Donald Lynch, the sole occupant of the car (MH 11, 28–29, 34). A search of Lynch revealed a large packet of white powder that was later determined to be cocaine (MH 11).

## II. The Indictment, Motions Hearing, and Trial

An indictment[2] filed on November 10, 1982, jointly charged Perry and Lynch with one count of unlawful distribution of cocaine, and one count of unlawful use of a communication facility. Both violations allegedly occurred on or about October 12, 1982. Lynch was also charged with possession with intent to distribute cocaine on the same date. Perry alone was charged on a count of unlawful distribution of cocaine on or about September 28, 1982.

On January 18, 1983, upon a motion to suppress the evidence taken from Lynch upon his arrest, counsel argued that the police did not have probable cause to be-lieve that Lynch was connected to Perry. After presentation of evidence, the trial judge denied the motion, based on (1) the discussions between Rawls and Perry; (2) the identity of the car and its link to Blakely, whose number Perry had called; and (3) the fact that Perry had gone out to meet the car as soon as it had arrived (MH 38–39).

Counsel for Lynch then moved to sever the trial. Noting that Lynch had not been indicted on the September 28 transaction, counsel argued that his client should not have to contend with evidence pertaining to that incident—particularly the references to "Don" or "Donnie." The prosecutor responded that the statements of September 28 were probative of the relationship between the defendants, and would be admissible against Lynch even if his trial were severed. Furthermore, the Government noted, the evidence supported the existence of a single ongoing transaction. Evidence before the trial court tending to link Lynch to the earlier transaction, and therefore relating to the motion to sever, included the following: the September 28 references to "Don" or "Donnie" (MH 23–24, 29–31), the informant's confirmation that "Don" or "Donnie" was the source of the cocaine (MH 23, 31–32), Perry's unequivocal response to Rawls' question on October 12 that the source would be the same as for the September 28 transaction (MH 36), and Perry's statement when the car horn blew, "That is him" (MH 10, 28). Noting that the

2. The Grand Jury charged:
FIRST COUNT:
On or about September 27, 1982, within the District of Columbia, DIANE T. PERRY did knowingly, intentionally and unlawfully distribute a quantity of cocaine, a Schedule II narcotic drug controlled substance.
(In violation of Title 21, U.S.C. § 841(a))
SECOND COUNT:
On or about October 12, 1982, within the District of Columbia, DONALD W. LYNCH and DIANE T. PERRY did knowingly, intentionally and unlawfully distribute a quantity of cocaine, a Schedule II narcotic drug controlled substance [sic]
(In violation of Title 21, U.S.C. § 841(a))
THIRD COUNT:
On or about October 12, 1982, within the District of Columbia, DONALD W. LYNCH did knowingly, intentionally and unlawfully possess with intent to distribute a quantity of cocaine, a Schedule II narcotic drug controlled substance.
(In violation of Title 21, U.S.C. § 841(a))
FOURTH COUNT:
On or about October 12, 1982, within the District of Columbia, DONALD W. LYNCH and DIANE T. PERRY knowingly and intentionally used a communication facility, namely a telephone, in order to commit, cause and facilitate the commission of a violation of Title 21, U.S.Code § 841(a) to wit, the unlawful, knowing and intentional distribution and possession with intent to distribute of cocaine, a Schedule II narcotic drug controlled substance.
(In violation of Title 21, U.S.C. § 843(b))

evidence indicated the existence of "one continuing transaction," the trial judge denied Lynch's motion to sever (MH 41).

Appellants were tried together beginning April 11, 1983. At trial the Government produced essentially the same evidence that had been aired at the motions hearing concerning both transactions. *See supra* section I. In addition, some further evidence was presented. The trial court allowed the Government to play in its entirety the taped recording of the October 12 transaction between Perry and Rawls, over the objection by defendant Perry on grounds that the tape was unduly prejudicial.[3] That tape had clearly recorded Perry's statements indicating that the source for the October 12 deal was the same as for the earlier transaction. Specifically, Rawls complained of the quality of the cocaine from the first transaction and asked whether the second supply was from the same source; Perry responded "Yes."

The tape also recorded in greater detail the arrangements for meeting made by Perry with the supplier whom she reached by calling the telephone pager's number. In addition, the Government put into evidence at trial the fact that when Lynch was arrested, he was carrying a telephone pager registered to Blakely and bearing the number that Perry had called earlier that same evening (Tr. 11–12, 336–37). During the Government's presentation of its case, just prior to the introduction of the taped conversation, appellant Lynch renewed his objection to the joint trial of the two defendants. The trial judge noted Lynch's exception to the earlier ruling denying severance, but went through with the joint trial (Tr. 186–87). On April 15, 1983, the two defendants were found guilty as charged. These appeals followed.

### III. JOINDER OF THE DEFENDANTS

■ The propriety of the joinder of defendants at trial presents the only issue of substance in this case. Appellant Lynch argues that his joinder in the indictment was improper under Fed.R.Crim.P. 8(b), and in the alternative, that the trial court's failure to sever the trial was an abuse of discretion under Fed.R.Crim.P. 14. We disagree, and affirm the district court on both aspects of the joinder issue.

#### A. *Joinder under Rule 8(b)*

Rule 8 governs joinder of both offenses and defendants. Where there are two or more defendants, Rule 8(b) controls joinder of both offenses and defendants. *See United States v. Jackson,* 562 F.2d 789, 793–94 (D.C.Cir.1977) (citing cases and commentary). The controlling legal standard for our case, then, is the following:

> **Joinder of Defendants.** Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and *all of the defendants need not be charged in each count.*

Fed.R.Crim.P. 8(b) (emphasis added). The purpose of this provision is to put some reasonable limitation on the conduct of mass trials.

Thus, the charge against Perry arising out of the September 28 cocaine transaction was properly joined with the charges against both Perry and Lynch on the October 12 incident only if both defendants were "alleged to have participated ... in the same series of acts or transactions ...." *Id.* Some participation on the part of appellant Lynch in the September 28 transaction is requisite.[4] As the second

---

3. The tape included a brief passage in which Perry made racially derogatory remarks, including use of the word "nigger." Both Rawls and Perry are black.

4. Professor Wright states that "All the defendants must have participated in the series of acts, and all of the charges must arise out of that series of acts.... Each defendant need not have participated in every act or transaction in the series." 1 C. Wright, Federal Practice and Procedure § 144, at 506–07 (2d ed. 1982) (citations omitted).

sentence of the rule clearly indicates, joinder was *not* rendered improper merely because Lynch was *not charged* on the first incident. In this case, however, the problem goes a little deeper, because the *indictment* itself suggests no participation on the part of Lynch in the first transaction, and no link between the two incidents. Broadly then, the question before this Court can be stated as follows: What relationship must the Government show in order to justify joinder, and when may it be shown?

Just *what* must be shown is not entirely evident from the language of Rule 8(b). Interpretative case law, reading Rule 8(b) in conjunction with Rule 8(a) and the policies underlying each, does, however, yield a fairly definitive answer to this question. The language "the same series of acts or transactions" may not be read to embrace similar or even identical offenses, *unless* those offenses are related. *See Jackson, supra,* 562 F.2d at 796; *Cupo v. United States,* 359 F.2d 990, 993 (D.C.Cir.1966), *cert. denied,* 385 U.S. 1013, 87 S.Ct. 723, 17 L.Ed.2d 549 (1967). The Rule is not limited to offenses or transactions, but extends to a "series of *acts* ... constituting an offense ..." in which the joined party participated, even though he may not be charged on that offense. As this Court recognized in *Jackson,* the required relationship of Rule 8(b) is "essentially coterminous with the wording employed in the last portion of Rule 8(a), 'two or more acts or transactions connected together or constituting parts of a common scheme or plan.' " *Jackson, supra,* 562 F.2d at 796 (citing 1 C. Wright, Federal Practice and Procedure § 144, at 322 (1969)). In other words, there must be a logical relationship between the acts or transactions within the series.

Judge McGowan's opinion in *Jackson* adopted a more purposive approach to what must be shown, and also recognized that the required relationship could be shown by the Government *before trial:*

> [Joinder of offenses under] Rule 8(b) is not limited to situations in which proof of the other criminal transaction would be admissible in a separate trial. It goes beyond, to others, the excuse being the benefit to the courts.... [T]his *possibility of benefit should explicitly appear from the indictment or from other representations by the government before trial.* Classic examples of such a benefit are when there is an overlapping of issues, as, for example, when some defendants are charged with transporting stolen goods in interstate commerce and others are charged with receiving the goods, so stolen and transported, or when defendants are charged with conspiracy to conceal a crime that part of their number are charged with committing. *Where, however, there are no presumptive benefits from joint proof of facts relevant to all the acts or transactions, there is no "series," Rule 8(b) comes to an end, and joinder is impermissible.*

*Jackson, supra,* 562 F.2d at 794–95 (quoting *King v. United States,* 355 F.2d 700, 704 (1st Cir.1966) (Aldrich, J.)) (emphasis added). This Court's adoption of Judge Aldrich's pragmatic approach to joinder of defendants significantly qualified our earlier decision in *Ward v. United States,* 289 F.2d 877 (D.C.Cir.1961), which had indicated that the required relationship must appear on the face of the indictment. In terms of timing, what is recognized is that a demonstration of the necessary relationship—and hence the benefit to the court of joinder—may be made by the Government at *some time before trial.* The same rule, permitting a showing before trial, was recognized in *United States v. Talavera,* 668 F.2d 625, 629 (1st Cir.), *cert. denied sub nom. Pena v. United States,* 456 U.S. 978, 102 S.Ct. 2245, 72 L.Ed.2d 853 (1982) (quoting *King, supra* ) ("[P]ossibility of benefit should explicitly appear from the indictment or from other representations by the government before trial."). Quite obviously, the indictment might satisfy this requirement, for instance when a conspiracy charge links all the offenses and defendants. Subsequent pre-trial representations, however, may suffice equally to satisfy Rule 8(b). Decisions in some other circuits

permit the evidentiary showing to be made at trial: *United States v. Leach*, 613 F.2d 1295, 1299 (5th Cir.1980) (Court "may look ... at evidence adduced at trial to determine whether joinder was proper.") (citing cases, n. 1); *accord United States v. Butera*, 677 F.2d 1376, 1385 (11th Cir.1982), *cert. denied*, 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 958 (1983); *United States v. Martin*, 567 F.2d 849, 853 (9th Cir.1977).[5] However, the timing of the showing here does not require us to rule on the sufficiency of a showing at trial.

Thus, in order to test the propriety of joinder in this case, we look to the Government's showing at the motions hearing of January 18, 1983. Both the admissible evidence presented to the district court at that hearing and the argument of the prosecutor sufficiently demonstrated the existence of a common scheme or plan spanning both transactions and both defendants. The crucial evidence was that supporting Lynch's participation in the September 28 transaction: the September 28 references by Perry to "Don" or "Donnie," the informant's confirmation that "Don" or "Donnie" was the source for that sale, Perry's clear statement on October 12 that the source on that day would be the same as for the first transaction, and her later identification of Lynch in the car, "That's him." In addition, though perhaps of less probative value, were the persistent telephone calls by Perry to the residence of Barbara Blakely, in whose car Lynch was sitting when he was arrested. These facts constitute substantial evidence that Lynch supplied the cocaine on September 28—and in that manner participated in that transaction.

Consistent with this Court's broad policy favoring initial joinder, *see Jackson, supra*, 562 F.2d at 796–97, the Government made an adequate showing of commonality between the two transactions. Review of the facts of the two incidents reveals that they are far from the situation presented in *Jackson*, in which this Court concluded that the "Government has neither demonstrated nor alleged any logical link between the assault and the robbery of which appellants were accused." *Id.* at 797.[6] The district court here was presented with two cocaine transactions involving the same purchaser, the same intermediary (Perry), and conducted at the same place in the same manner. In addition, there was an escalation in volume, and references on October 12 to reliance by the parties on the experience gained in the prior transaction, including the identity of the supplier. There was certainly an ongoing relationship, if not a single ongoing transaction.

The case of *United States v. Martinez*, 479 F.2d 824 (1st Cir.1973), in which joinder of defendants was upheld as proper, offers a remarkably close factual analogy to this case. In *Martinez*, the First Circuit relied on the representations in the indictment and the bill of particulars showing two drug transactions five days apart, involving the same suppliers and the same buyer, conducted in the same apartment, and in which discussions at the second transaction clearly indicated knowledge of the first. *Id.* at 828.[7] That court also noted that

---

**5.** Circuits have differed on the question of when the necessary relationship under Rule 8(b) must be demonstrated. With the cases cited in text, compare *United States v. Bledsoe*, 674 F.2d 647, 655 (8th Cir.), *cert. denied sub. nom. Phillips v. United States*, 459 U.S. 1040, 103 S.Ct. 456, 74 L.Ed.2d 608 (1982) ("[P]ropriety of joinder must appear on the face of the indictment.").

For the different, though related, proposition that joinder may be justified by the inclusion in the indictment of an all inclusive conspiracy count that is dismissed before the case is submitted to the jury, see *Schaffer v. United States*, 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960).

**6.** It should also be noted that this Court's reversal of the defendants' robbery convictions in *Jackson* hinged importantly on the *jurisdictional* dimension of the joinder question in that case, involving as it did the peculiar jurisdictional scheme that governed joint prosecution of separate federal and District of Columbia crimes committed within the District. *See Jackson, supra*, 562 F.2d at 797. That important jurisdictional aspect of *Jackson* is not present in this case.

**7.** For similar cases upholding joinder, see *United States v. Talavera, supra*, 668 F.2d at 629; *United States v. Dennis*, 645 F.2d 517, 520–21

proof of what occurred at the first transaction would likely have been admissible against the defendant regardless of whether a severance was ordered. *Id.* That observation is equally true, and equally relevant, in this case: the evidence tying these defendants and transactions together would have been admissible in a separate trial of Lynch to show his prior relationship with Perry, and that Lynch was the contemplated source on October 12. *See Drew v. United States,* 331 F.2d 85, 89–90 (D.C. Cir.1964); Fed.R.Evid. 404(b). There was a substantial overlap of issues and evidence demonstrated before trial. In sum, we conclude that the connections between the defendants and the transactions were sufficiently close to warrant initial joinder in this case.

## B. *Failure to Sever Under Rule 14*

■ As a fallback, appellant Lynch contends that, even assuming that initial joinder was proper, the trial judge should have severed the trial once the Government had made a substantial part of its case, and once the judge ruled that the taped conversation between Rawls and Perry could be admitted in its entirety. Brief for Appellant Lynch at 18. This issue is governed by Rule 14, which allows the trial judge to sever the trial if the defendant is unduly prejudiced.[8] In *Schaffer v. United States,* 362 U.S. 511, 516, 80 S.Ct. 945, 948, 4 L.Ed.2d 921 (1960), the Supreme Court imposed upon "the trial judge ... a continuing duty at all stages of the trial to grant a severance if prejudice does appear."

As the language of Rule 14 indicates, the trial judge has wide discretion whether to sever a trial that has properly been joined. In light of the Government's strong interest in favor of joint trials, this Court has struck a balance in favor of joinder. *See United States v. Bruner,* 657 F.2d 1278, 1289–90, 1291 (D.C.Cir.1981) (citations omitted). It is beyond dispute that the trial court's ruling may be disturbed only upon a showing of abuse of discretion.[9] We find nothing in the record of this case to support such a conclusion. In particular, none of the recognized bases for severance due to prejudice—drastic disproportionality of the evidence, and likely inability of the jury to compartmentalize the evidence against the respective defendants—was present in this case. *See Bruner, supra,* 657 F.2d at 1290–91 (discussing cases providing bases for severance). The taped conversation between Rawls and Perry, upon which appellant Lynch focuses, contained several references probative of the standing relationship between the defendants. In order to prevail, appellant must demonstrate more than that he "might have had a better chance of acquittal if tried separately." *E.g., United States v. Wilson,* 434 F.2d 494, 501 (D.C. Cir.1970) (citations omitted). We conclude that the district court was well within its discretion to deny severance of the trial.

## IV. OTHER ISSUES

■ We have reviewed appellants' other objections and find them entirely without merit. We address each briefly in turn. First, Lynch complains that the trial court

(5th Cir.), *cert. denied,* 454 U.S. 1034, 102 S.Ct. 573, 70 L.Ed.2d 478 (1981); *United States v. Ford,* 632 F.2d 1354, 1371–72 (9th Cir.1980), *cert. denied sub. nom. Armstrong v. United States,* 450 U.S. 934, 101 S.Ct. 1399, 67 L.Ed.2d 369 (1981); *Wiley v. United States,* 277 F.2d 820 (4th Cir.), *cert. denied,* 364 U.S. 817, 81 S.Ct. 47, 5 L.Ed.2d 47 (1960).

**8.** In its entirety, Fed.R.Crim.P. 14 provides:

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or

provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney for the government to deliver to the court for inspection *in camera* any statements or confessions made by the defendants which the government intends to introduce in evidence at the trial.

**9.** *See, e.g., United States v. Gorham,* 523 F.2d 1088, 1092 (D.C.Cir.1975); *United States v. Leonard,* 494 F.2d 955, 965 (D.C.Cir.1974); *United States v. Hines,* 455 F.2d 1317, 1334 (D.C.Cir. 1971), *cert. denied,* 406 U.S. 975, 92 S.Ct. 2427, 32 L.Ed.2d 675 (1972); *United States v. Gambrill,* 449 F.2d 1148, 1159 (D.C.Cir.1971).

erred in not suppressing the physical evidence yielded by the search after his arrest. He maintains that the warrantless arrest was without probable cause because the police "had absolutely *no* basis for believing that Donald Lynch was involved with Diane Perry." Brief for Appellant Lynch at 19 (emphasis in the original). Apart from the possibility that the police did not know Lynch's full name, this factual assertion is wildly inaccurate. Given what the police knew at the time of the arrest, as demonstrated by the evidence in these cases, *see supra,* probable cause was indisputably present.

Second, appellants complain that the trial court should have granted their motion for judgment of acquittal on the count charging unlawful use of a communications facility. In essence, they argue that there was insufficient evidence of the identity of the party on the other end of defendant Perry's telephone conversations on October 12 arranging for delivery of the cocaine. Viewing the evidence and inferences therefrom in the light most reasonably favorable to the Government, *see United States v. Lemire,* 720 F.2d 1327, 1351 (D.C.Cir.1983), we find that there was ample circumstantial evidence from which the jury could conclude, as it apparently did, that defendant Lynch was the party at the other end of the telephone line. The district court did not err denying appellants' motion on this count.

Finally, appellant Perry complains that the trial court abused its discretion under Rule 403 of the Federal Rules of Evidence when it declined to edit the tape recording played to the jury, to excise her racially derogatory remarks. We are free to overturn the trial judge's ruling only upon a showing of grave abuse of discretion. *See United States v. Weisz,* 718 F.2d 413, 431 (D.C.Cir.1983). The district court allowed the tape to be played in its entirety upon consideration of a broad range of factors: the defense's efforts to discredit the tape on the claim that it had been edited, the anticipation of an entrapment defense, the relevance of the conversation to the circumstances of the transaction, and credibility considerations. We conclude that the ruling allowing the entire tape to be played was not an abuse of discretion.

## V. CONCLUSION

We find no error in the trial court's joinder in one trial of the two defendants and the charges arising out of the two transactions. Nor do any of the appellants' other claims of error have any merit. For these reasons, we affirm the judgments of conviction of both defendants on all counts.

*Judgment accordingly.*