890 F.2d 1250
 281 U.S.App.D.C. 445
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America
v.
Timothy KIRKLAND, Appellant.
 No. 89-3007.
 United States Court of Appeals, District of Columbia Circuit.
 Nov. 27, 1989.
 
 Before BUCKLEY, D.H. GINSBURG and SENTELLE, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This cause came to be heard on an appeal from the United States District Court for the District of Columbia and was argued by counsel. The court has determined that the issues presented occasion no need for a published opinion. See: D.C.Cir.Rule 14(c). For the reasons set forth in the accompanying memorandum, it is
 
 
 2
 ORDERED and ADJUDGED by this court that the judgment of the District Court from which this appeal has been taken is affirmed.
 
 
 3
 It is FURTHER ORDERED, sua sponte, that the Clerk shall withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir. Rule 15.
 
 MEMORANDUM
 
 4
 Timothy Kirkland raises four issues on appeal: (1) that the trial court committed reversible error by allowing into evidence, over his objection, documents that had not been properly authenticated; (2) that the evidence presented by the government was insufficient to support his conviction so that his motion for a judgment of acquittal should have been granted; (3) that it was reversible error for the District Court to have denied his mid-trial motion for severance; and, (4) that there was insufficient evidence to indict him. We find that none of these issues require reversal.
 
 
 5
 Kirkland was charged with seven counts related to a scheme whereby taxicab drivers and a George Washington University Medical Center ("GWU") employee, codefendant Donna Smith, conspired to defraud the District of Columbia medicaid program by obtaining reimbursement for fraudulent medicaid taxicab vouchers. The general outline of the scheme was that Smith obtained medicaid taxicab vouchers from GWU and supplied them to taxicab drivers along with fraudulent information. The drivers, including Kirkland, then submitted these vouchers for reimbursement. Count one charged Kirkland with conspiring with Smith and Liston Thomas, another cab driver, to commit medicaid fraud. 18 U.S.C. Sec. 371. Counts two through six charged Kirkland with specific acts of medicaid fraud, based on individual vouchers. 42 U.S.C. Sec. 1320a-7b. Count seven charged Kirkland with fraud and forgery in violation of the law of the District of Columbia in connection with a specific voucher. D.C.Code Secs. 22-3841, 22-3842(a).
 
 
 6
 The government submitted the taxicab vouchers referenced in counts two and four through seven as its exhibits one through five, a voucher signed by Liston Smith, as its exhibit six,[1] and a book containing almost 100 additional vouchers, as exhibit seven.
 
 
 7
 Kirkland claims that the vouchers submitted as exhibits one through seven were not properly authenticated. Fed.R.Evid. 901(a) provides that the requirement of authentication "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The testimony of Janice Anderson and Mildred Holder was sufficient to allow a finding that the documents were what the government claimed, namely, medicaid taxicab vouchers. Anderson, as an administrator of the District of Columbia Department of Human Services, identified the exhibits as medicaid taxicab vouchers. Transcript I 40-48. Holder, the cashier of Capital Cab, identified the exhibits as having been submitted for payment and as having been paid at Capitol Cab since they bore the stamp that Capitol Cab placed on paid vouchers. Transcript I 81-87. The identification by Anderson and Holder was sufficient for authentication of the vouchers despite the lack of testimony by any witness that she was familiar with the specific vouchers submitted. See United States v. Blackwell, 694 F.2d 1325, 1329-31 (D.C.Cir.1982).
 
 
 8
 Holder also testified that she recognized Kirkland's signature on exhibits one through six, and identified Kirkland's name on two of the vouchers in exhibit seven. Transcript I 83-87, 90-91. Anderson testified that Kirkland's name appeared on the cab driver line in exhibits one through six. Transcript I 46. Finally, the testimony of Officer Nicholson, who investigated the GWU voucher fraud, indicated that Kirkland's name appeared on and that Kirkland had submitted the vouchers in exhibit seven. Transcript II 139-40.
 
 
 9
 The vouchers were submitted to the jury along with two exemplars of Kirkland's signature, government's exhibit 21 and a stipulated signature. It was for the jury to determine whether Kirkland had signed and submitted the vouchers. Any defect in authentication when the vouchers were admitted following Anderson's testimony did not prejudice Kirkland. The testimony of Holder and Nicholson filled any gap in Anderson's identification of the vouchers. Blackwell, 694 F.2d at 1331.
 
 
 10
 Kirkland's assertion that it was error for the trial court to deny his motion for a judgment of acquittal is also without merit. Though he claims that the government did not present sufficient evidence to allow a reasonable jury to find him guilty beyond a reasonable doubt, noting that coconspirator Liston Thomas did not implicate him during his testimony, other sufficient evidence would allow a jury to find Kirkland guilty of all of the six counts of which he was convicted. Viewed in the light most favorable to the government, the evidence showed that Kirkland had submitted fraudulent taxicab vouchers, sufficiently connected with coconspirator Smith. See United States v. Morris, 836 F.2d 1371, 1373 (D.C.Cir.1988).
 
 
 11
 The same evidence--except for the individual voucher numbers--applied to all counts. As noted above, evidence supported a conclusion that Kirkland had signed the vouchers in exhibits one through six and several vouchers in exhibit seven. Holder's testimony that the vouchers bore the Capitol Cab "paid" stamp and that she disbursed payment only to the driver who submitted the voucher and whose signature appeared on it supported a conclusion that Kirkland submitted the vouchers and was paid.
 
 
 12
 GWU employee, Pamela Wheeler, an authorized signator for medicaid taxicab vouchers, testified that someone else had signed her name on some of the vouchers in exhibit seven, that no one else was authorized to do so, and that her signature had been forged on the vouchers in exhibits one through six. Helen Scott, another GWU employee, testified that her signature had been forged on some of the vouchers in exhibit seven. Additionally, Anderson and Nicholson presented evidence showing that the vouchers were fraudulent. The connection to Smith was demonstrated by Wheeler's testimony that she recognized Smith's handwriting on at least twenty of the vouchers in exhibit seven and by other evidence of Smith's access to the vouchers.
 
 
 13
 Kirkland moved at the conclusion of the government's case in chief for a severance of the trial. This motion was based on his claim that the evidence against codefendant Smith was far greater than the evidence against him. In light of the standard set out in United States v. Perry, 731 F.2d 985, 992 (D.C.Cir.1984), that "the trial court's ruling [on a mid-trial motion for severance] may be disturbed only upon a showing of abuse of discretion," we can grant Kirkland no relief. Although the evidence may not have been of identical impact against the two defendants, Kirkland has not demonstrated the dramatic disparity that would be required to justify a motion for severance not made in accordance with Fed.R.Crim.P. 12(b)(5). United States v. Bruner, 657 F.2d 1278, 1290 (D.C.Cir.1981). He certainly has shown no abuse of discretion.
 
 
 14
 Finally, Kirkland claims that the indictment should have been dismissed because "no direct testimony had been presented to the grand jury regarding [Kirkland's] participation in the circulation of payment vouchers." Appellant's Brief at 21. In challenging the sufficiency of the evidence presented to the grand jury, Kirkland faces a substantial hurdle, because an indictment valid on its face is presumed valid absent clear evidence to the contrary. United States v. Calandra, 414 U.S. 338, 345 (1974). Any evidence whatsoever is sufficient to support the grand jury's decision to indict. See Costello v. United States, 350 U.S. 359, 363 (1956). Kirkland's assertion that the grand jury indicted on the basis of insufficient direct evidence is unavailing. Most importantly, even if there were any defects in the return of the indictment, Kirkland has failed to make any demonstration why this case falls outside the rule "that the petit jury's verdict of guilty beyond a reasonable doubt demonstrates a fortiori that there was probable cause to charge the defendant[ ]...." United States v. Mechanik, 475 U.S. 66, 67 (1986).
 
 
 15
 For the foregoing reasons, the judgment of the District Court is affirmed.
 
 
 
 [1]
 Kirkland was acquitted of the medicaid fraud charged in count three, which was based on the submission of the voucher identified as exhibit six